FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JUL 15  AM 11: 22

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EILEEN MALDONADO, On Behalf of Herself and All Others Similarly Situated | ) ) ) | **04-1987** |
| vs. | ) | Civil Action No.: |
| | ) | SECT F MAG. 3 |
| OCHSNER CLINIC FOUNDATION and JOHN DOES 1 THROUGH 10 | ) ) ) | |

## COMPLAINT - CLASS ACTION
## (JURY TRIAL DEMANDED)

The Plaintiff, Eileen Maldonado, hereby files this Class Action Complaint seeking monetary damages, injunctive and other equitable relief against the Defendants and alleges the following:

## I.

### INTRODUCTION

Defendant Ochsner Clinic Foundation has operated free from federal and state taxes because it promised the government that it would operate as a charity provider of health care for the uninsured and that it would not engage in business "directly or indirectly, for the benefit of private interests." In reality, Ochsner does just the opposite: it charges its uninsured patients significantly more than those who have insurance, generally pursuing the poor or uninsured

Fee 150
Process
X Dktd CAQ
CtRmDep
Doc. No. 1

-1-

relentlessly by aggressive and humiliating collection techniques.   At the same time, through discounts to private insurance companies, its affiliated health plan and subsidies to for-profit physician groups it favors, Ochsner is rampantly violating the federal and state prohibition against profiteering by "private interests."   On information and belief, defendant Ochsner's clinics have disbursed millions of tax free dollars to its doctors in the form of bonuses.

Ochsner has thereby amassed and hoarded millions of dollars in cash and marketable securities, which otherwise should be available to provide charity care to the uninsured who were contemplated by the tax exemption.   Moreover, enormous property and revenues have been insulated from taxation, the effect of which has bestowed upon Defendant Ochsner greater financial resources than those of many state and local governments.   Defendant Ochsner maintains and receives tax-free revenue from hotels, fitness centers, apartments and other ventures unrelated to Ochsner's purported charitable purpose.

This Complaint asks the Court to certify a Class of the intended beneficiaries of Ochsner's commitment to the government, more fully defined below, and to require Ochsner to honor the commitments for which it received its unique freedom from taxation.

## II.
## PARTIES

1.     Plaintiff Eileen Maldonado is an adult resident citizen of Jefferson, Louisiana, residing at 557 Terrace, Jefferson, Louisiana 70121.

2.     Defendant Ochsner Clinic Foundation ("Ochsner") is a Louisiana not-for-profit corporation with its principal place of business in New Orleans, Louisiana.

3.     The various Defendants, designated John Does 1 through 10, are, based upon information and belief, certain unknown and unnamed persons and/or entities who may be liable for the claims asserted herein, who include but are not limited to agents, servants, employees, representatives, affiliates, parents, subsidiaries, joint tortfeasors, tortfeasors, contractors, co-conspirators, joint adventures, partners, stockholders of the named Defendants and/or any other persons who may be liable to the Plaintiff for the claims asserted herein.

## III.
## JURISDICTION AND VENUE

4.     This Court has jurisdiction over the subject matter of this controversy pursuant to 28 U.S.C. §1331 and 1367, because Plaintiff's claims arise out of a federal contract between Defendant Ochsner and the United States Government in which Ochsner agreed to provide mutually affordable medical care to its uninsured  patients  in exchange for a tax exempt status under 26 U.S.C. §501(c)(3).  This Court also has subject matter jurisdiction of this controversy under 42 U.S.C. §1395 dd because Defendant Ochsner conditioned providing emergency room medical care to the Plaintiff and the Class on their ability to pay and on financial guarantees from the Plaintiff and the Class.  This Court further has subject matter jurisdiction of this controversy under 28 U.S.C. §1340 because Plaintiff's claims arise out of Defendant Ochsner's duties and obligations under 26 U.S.C. §501(c)(3).

5.     Venue in this district is proper pursuant to 28 U.S.C. §1391(b).

-3-

## IV.

## FACTS

6.      Defendant Ochsner represents itself as a New Orleans based, tax exempt, nonprofit hospital system that consists of a 441–licensed bed hospital, the State's largest multi-specialty group practice and the State's largest HMO.

7.      Defendant Ochsner is one of the largest healthcare providers in the Metropolitan New Orleans area.  It has the second highest market share in the New Orleans region, with a 11.6% market share in 2002.  Defendant Ochsner currently maintains one hospital in New Orleans and numerous clinics in New Orleans and surrounding municipalities.

8.      In 2002, Ochsner generated over $1 billion in patient revenue.  At the close of 2002, it had nearly $500 million in cash and investments.

9.      Defendant Ochsner entered into express and/or implied Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans to provide mutually affordable medical care to all of its patients in return for substantial tax exemptions.  An express and/or implied contractual relationship was thereby created between Defendant Ochsner and the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans to accomplish such purpose.   Defendant Ochsner's uninsured patients during the period of July 14, 1994 to July 14, 2004, were the express and/or implied intended third party beneficiaries of such Agreements.

10.      Defendant Ochsner has applied for and has received a federal income tax exemption as a purported "charitable" institution under 26 U.S.C. §501(c)(3).  Under §501(c)(3), Defendant Ochsner is required to operate "exclusively"  in furtherance of a charitable purpose,

-4-

with no part of its operations attributable directly or indirectly to any noncharitable commercial purpose and with no part of its earnings inuring to the benefit of any private individual or entity. By accepting this favorable tax exemption, Defendant Ochsner explicitly and/or implicitly agreed to the following: to operate exclusively for charitable purposes; to provide an emergency room open to all of its uninsured patients without regard to their ability to pay for such care; to provide mutually affordable medical care to all of its uninsured patients; not to charge its uninsured patients the highest and full undiscounted cost for medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

      11.     Defendant Ochsner has applied for and has also received state and local income, property and sales tax exemptions from the State of Louisiana, Orleans Parish, and the City of New Orleans. By accepting these favorable state and local tax exemptions, Defendant Ochsner explicitly and/or implicitly agreed: to operate for charitable purposes; to provide mutually affordable medical care to all of its uninsured patients; not to charge its uninsured patients the highest and full undiscounted cost of medical care; not to charge its uninsured patients a higher rate for medical care than its insured patients; to use its net assets and revenues to provide mutually affordable medical care to its uninsured patients; and not to pursue outstanding medical debt from its uninsured patients through humiliating collection efforts, lawsuits, liens and garnishments.

12.     Despite its favorable tax exempt status and its substantial net revenues and asset reserves in the millions of dollars, Defendant Ochsner has breached its Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans by: failing to provide emergency room medical care to its uninsured patients without regard to their ability to pay for such care; charging its uninsured patients the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services; providing discounted medical care to private insurance companies; providing discounted medical care to its employees and entities connected to its Board of Directors; allowing noncharitable for-profit physician groups and service providers to derive profit from its tax exempt hospitals; and by engaging in aggressive efforts to collect such medical debt from its uninsured patients through abusive, harassing, and humiliating collection lawsuits, liens, and garnishments. Defendant Ochsner's uninsured patients have therefore not received the benefit of the Agreements between Defendant Ochsner and the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans. These uninsured patients primarily consist of the working class who do not qualify for Medicaid or charity care but cannot afford private health insurance and/or cannot obtain health insurance through their employers.

13.     Defendant Ochsner sets its charges for medical services at highly inflated rates that bear no connection to the actual cost of providing the service. While Defendant Ochsner gives its health plan members, private insurance companies and governmental third party payors like Medicare and Medicaid large discounts off this gross or "sticker price," most of its uninsured patients are charged 100% of the full sticker price, which is two to three times more

than Ochsner charges its insured patients for the same service. Furthermore, Defendant Ochsner requires a deposit from its uninsured patients before providing medical care at its inflated rates.

14.     Defendant Ochsner realizes substantial revenues from this discriminatory charging practice. On information and belief, Defendant Ochsner also realizes the highest profit per discharge on its uninsured patients who pay such grossly inflated prices.

15.     Despite sizeable net revenues and asset reserves in the hundreds of millions of dollars, Defendant Ochsner provides little to no charity care to its uninsured patients. Defendant Ochsner's level of charity care constitutes only a small amount of its gross charges. According to reports filed with the Internal Revenue Service for 2002, less than $1/10^{th}$ of 1% of Ochsner's medical services were classified as "charitable" despite the fact that one hundred percent of Ochsner's income and property were shielded from taxation. Defendant Ochsner has never provided an amount of uncompensated care equal to its market share. Notwithstanding its tax exemptions, Defendant Ochsner provides less charity care than many of its for profit hospital competitors.

16.     On information and belief, Defendant Ochsner uses inappropriate accounting methods to grossly distort the small amount of charity care it does provide to its uninsured patients. Defendant Ochsner reports its amount of charity care as the amount of gross charges – which are grossly inflated – rather than the cost of actually providing the service.

17.     On information and belief, before Defendant Ochsner admits any patient, including its uninsured  patients, into its hospitals and/or emergency rooms for emergency medical care, it requires its patients to sign a form contract promising to pay Defendant Ochsner in full for unspecified and undocumented charges for medical care that are set by Defendant

-7-

Ochsner in its sole discretion.  Defendant Ochsner will not admit patients into its emergency rooms for emergency medical care unless and until that patient agrees to provide a deposit and agrees to pay Ochsner in full for such unspecified and undiscounted charges.

18.     Not only does Defendant Ochsner charge its uninsured  patients the highest rates for medical care, which they cannot afford to pay, it has also engaged in the uniform pattern and practice of aggressively pursuing such debt through abusive, humiliating, and harassing collection efforts, such as collection lawsuits, liens, and garnishments.

19.     While Defendant Ochsner charges its uninsured patients the full undiscounted cost for medical care, upon information and belief, it provides substantial discounts off the gross charges to its employees and members of its affiliated health plan.  Ochsner also provides substantial discounts to non-charitable for-profit private insurance companies.  These discounts are in direct violation of Defendant Ochsner's obligations under 26 U.S.C. §501(c)(3), which forbids such cronyism and self dealing.

20.     Defendant Ochsner also allows numerous outside for-profit physician groups and service providers to use its tax-exempt hospital to derive a profit.  These for-profit physician groups and service providers practice in Ochsner's taxpayer-subsidized hospital and clinics and then bill patients for work done at these tax-exempt hospitals.  These for-profit physician groups and service providers are non-charitable entities which do not have a charitable mission or purpose.  By allowing noncharitable for-profit entities with no charitable mission to derive a profit from its charitable tax-exempt hospitals, Defendant Ochsner has not operated actually and exclusively for charitable purposes in violation of its obligations under 26 U.S.C. §501(c)(3), which  specifically prohibits charitable tax-exempt property to be used for noncharitable

-8-

purposes.  Furthermore, Defendant Ochsner uses its tax-exempt status to shield the income earned from its clinics, apartments, fitness centers and other non-charitable ventures from federal and state taxation.

21.    On information and belief, American Hospital Association ("AHA"), the self – proclaimed representative of Defendant Ochsner and the nonprofit hospital industry, provides substantial assistance and guidance to Defendant Ochsner and the nonprofit hospital industry on its billing and collection practices for uninsured patients.

22.    The AHA also falsely justifies such billing and collection practices to government entities.  On December 16, 2003, the AHA sent a letter to the United States Department of Health and Human Services Secretary Tommy Thompson in which it concealed and misrepresented Defendant Ochsner's and other hospitals' billing and collection practices. Specifically, the AHA, while admitting that Defendant Ochsner and its nonprofit hospital members charge its uninsured patients the full price for medical care, falsely represented to the Secretary that Defendant Ochsner and its member nonprofit hospitals were required by the federal Medicare regulations to charge and aggressively collect such grossly inflated medical expenses.  On February 19, 2004, Secretary Thompson, as the ultimate governmental authority on the applicable Medicare regulations, exposed the falsity of the AHA's representations, stating that the Medicare regulations have never required nonprofit hospitals to charge its uninsured patients the full price for medical care.

## V.

## PLAINTIFF

23.    Ms. Maldonado was assaulted and injured on September 7, 2003 and required immediate medical attention.  The ambulance service called to the scene of the incident delivered Ms. Maldonado to Defendant Ochsner's hospital for medical treatment.  Defendant Ochsner treated Ms. Maldonado for a punctured lung and other injuries.  While Ms. Maldonado was still being treated by Defendant Ochsner for her injuries, employees of Defendant Ochsner repeatedly questioned Ms. Maldonado about her employment status, medical insurance and ability to pay Ochsner's charges.

24.    Shortly after receiving medical treatment from Defendant Ochsner, Ms. Maldonado began to receive bills from Defendant Ochsner and its doctors.  Despite being aware of Ms. Maldonado's indigent status, Defendant Ochsner charged Ms. Maldonado its highest rates for the medical services provided to Ms. Maldonado.  The charges for services provided to Ms. Maldonado totaled approximately $20,000.  Defendant Ochsner did not offer Ms. Maldonado any of the discounts routinely given to patients covered by third-party insurance.  Moreover, Defendant Ochsner did not offer Ms. Maldonado any charity care.

25.    Rather than providing Ms. Maldonado with discounts available to patients with insurance, Defendant Ochsner continued to send invoices to Ms. Maldonado reflecting Defendant Ochsner's inflated charges for services.  Within four months of being discharged from the hospital, Ms. Maldonado began receiving demands from a collection agency for payment for services she received while at Defendant Ochsner's hospital.

-10-

**VI.**

**CLASS ACTION ALLEGATIONS**

26.   Plaintiff brings this class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of a Class consisting of all persons who received any form of healthcare treatment at Ochsner from July 14, 1994 through the date of commencement of class notice or entry of judgment and who were uninsured, i.e., had no commercial insurance whatsoever, and who were not covered by Medicare or Medicaid at the time of treatment. Excluded from the Class are defendants, defendants' officers, directors, legal representatives, heirs, successors, and assigns; and any judicial officer assigned to this case and his or her immediate family.

27.   Plaintiff Eileen Maldonado is a member of the Class she seeks to represent.

28.   The Class consists of thousands of individuals and therefore is so numerous that joinder is impracticable.

29.   Plaintiff's claims are typical of the claims of the Class because they and all of the Class sustained damages as a result of Defendant Ochsner's unfair and discriminatory charging and/or collection practices seeking the full undiscounted cost of medical care.

30.   There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

(a)   whether Defendant Ochsner entered into express and/or implied Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans that in return for substantial tax exemptions, it would: operate for charitable purposes; provide

-11-

emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; provide mutually affordable medical care to the Plaintiff and the Class; and not to seek to collect outstanding medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(b)     whether Defendant Ochsner breached said Agreements with the U.S. Government, State of Louisiana, Orleans Parish, and the City of New Orleans by: failing  to operate for charitable purposes; failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; failing to provide mutually affordable medical care to the Plaintiff and the Class; and by seeking to collect outstanding medical debt from the Plaintiff and the Class through aggressive, abusive, and humiliating collection practices;

(c)     whether the Plaintiff and the Class are express and/or implied intended third party beneficiaries to said Agreements between Defendant Ochsner and the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans;

(d)     whether Defendant Ochsner charged the Plaintiff and the Class the full undiscounted cost of medical care in violation of its charitable, nonprofit, tax exempt status;

-12-

(e)    whether Defendant Ochsner charged the Plaintiff and the Class higher amounts for medical care than its insured patients in violation of its charitable, nonprofit, tax exempt status;

(f)    whether Defendant Ochsner profited by charging the Plaintiff and the Class the highest rates for medical care;

(g)    whether Defendant Ochsner charged the Plaintiff and the Class unreasonable charges for medical care;

(h)    whether Defendant Ochsner conditioned emergency room medical screening and/or treatment to the Plaintiff and the Class on their ability to pay or financial guarantees to pay for such medical care in violation of 26 U.S.C. §501(c)(3) and 42 U.S.C. §1395 dd;

(i)    whether Defendant Ochsner should have utilized its sizable financial resources to provide a greater amount of mutually affordable medical care to the Plaintiff and the Class pursuant to its charitable, nonprofit, tax exempt status;

(j)    whether Defendant Ochsner has utilized aggressive, unfair, abusive, and harassing collection practices, lawsuits, liens, and garnishments to collect medical payments from the Plaintiff and the Class in violation of its charitable, nonprofit, tax exempt status;

(k)    whether Defendant Ochsner violated the anti-inurement provision under 26 U.S.C. §501(c)(3) by providing substantial discounts in medical care to

-13-

private insurers, its Board of Directors, and entities affiliated with Defendant Ochsner;

(l)     whether Defendant Ochsner failed to operate exclusively for charitable purposes by allowing noncharitable for-profit entitles to derive a profit from its use of its tax-exempt hospitals in violation of 26 U.S.C. §501(c)(3);

(m)    whether Defendant Ochsner breached its duty of good faith and fair dealing to the Plaintiff and the Class;

(n)     whether a charitable trust was created for the benefit of the Plaintiff and the Class;

(o)     whether Defendant Ochsner's actions as alleged in the Complaint violated the Louisiana Unfair Trade Practices and Consumer Protection Law;

(p)     whether Defendant Ochsner has been unjustly enriched at the Plaintiff's and the Class' expense;

(q)     whether the AHA conspired with Ochsner to breach its contracts with the United States Government, State of Louisiana, Orleans Parish, and the City of New Orleans;

(r)     whether the AHA aided and abetted Ochsner in breaching its contracts with the United States Government, State of Louisiana, Orleans Parish, and the City of New Orleans.

(s)     whether Defendant Ochsner should be enjoined from continuing its unfair, discriminatory, and abusive conduct; and

-14-

(t)    whether Defendants are liable to the Plaintiff and the Class in this action, as alleged in the Complaint.

31.    All common questions are able to be resolved through the same factual occurrences as specifically and/or generally alleged herein.

32.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff has no claims antagonistic to those of the Class.  Plaintiff has retained competent and experienced counsel in complex class actions, and mass tort and products liability litigation.  Counsel is committed to the vigorous prosecution of this action.

33.    The prosecution of separate actions by the Plaintiff and individual members of the Class against the Defendants would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

34.    This Class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

35.    The expense and burden of litigation would substantially impair the ability of the Class Members to pursue individual cases in order to initiate their rights.  In the absence of a class action, the Defendants will retain the benefits of their wrongdoing.

36.    Class certification pursuant to Rule 23(b)(3) is appropriate because the common issues of fact and law alleged herein are common to the Class and predominate over any questions affecting only individual members, thereby rendering the class action superior to all other available methods for the fair and efficient adjudication of this controversy.

37.    Class certification is also appropriate pursuant to Rule 23(b)(2) because, as set forth in the Complaint, Defendant Ochsner has acted and/or refused to act on grounds generally

-15-

applicable to the Plaintiff and the Class, thereby warranting appropriate injunctive and/or declaratory relief.

## VII.
## CAUSES OF ACTION

### COUNT ONE
### THIRD PARTY BREACH OF CONTRACT

38.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 37 of the Complaint.

39.     Defendant Ochsner, as a purported charitable entity under 26 U.S.C. §501(c)(3), entered into an express and/or implied Agreement with the United States Government pursuant to §501(c)(3) that in return for a substantial federal income tax exemption valued in the millions of dollars it would: operate exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care;  provide mutually affordable medical care to the Plaintiff and the Class; not to pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals or entities.

40.     Defendant Ochsner also entered into express and/or implied Agreements with the State of Louisiana, Orleans Parish, and the City of New Orleans that in return for substantial state income, property, and sales tax exemptions valued in the millions of dollars, it would: operate actually and exclusively for charitable purposes; provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care;  provide

-16-

mutually affordable medical care to the Plaintiff and the Class;   not to pursue outstanding medical debt from the Plaintiff and the Class by engaging in aggressive, abusive, and humiliating collection practices; and not provide financial inurement to private individuals and entities.

41.     The Plaintiff and the Class are the express and/or implied intended third party beneficiaries of Defendant Ochsner's Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans.

42.     Defendant Ochsner breached the above-mentioned Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class significantly more than its insured patients for the same medical services; failing to use its net assets and revenues in the millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class; providing substantial discounts off the gross charges to private insurance companies,  its Board of Directors,  and entities affiliated with Defendant Ochsner; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.  As a result of such conduct, the Plaintiff and the Class have not received the benefit of Defendant Ochsner's Agreements with the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans.  Such conduct is also contrary to the Defendant Ochsner's purported charitable purpose and its nonprofit status.

-17-

43.     The aforementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT TWO
### BREACH OF CONTRACT

44.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 43 of the Complaint.

45.     Alternatively, upon admission, the Plaintiff and the Class entered into express form contracts with Defendant Ochsner whereby the Plaintiff and the Class were required to agree to pay unspecified and undocumented charges for medical care set by Defendant Ochsner in its sole discretion.  Imputed in these contracts is the express and/or implied contractual obligation by Defendant Ochsner that it would charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care.

46.     Similarly, by accepting and admitting the Plaintiff and the Class into its hospitals for medical care, Defendant Ochsner undertook an express and/or implied contractual obligation to charge the Plaintiff and the Class no more than a fair and reasonable charge for such medical care.

47.     Defendant Ochsner breached its contractual obligations under these form contracts by charging the Plaintiff and the Class the highest and full undiscounted cost for medical care.  These charges are unfair, unreasonable, and bear no relation to the actual cost of providing such services.

48.     The aforementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

-18-

## COUNT THREE

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

49.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 48 of the Complaint.

50.     Defendant Ochsner's conduct as alleged above also constitutes a breach of its duty of good faith and fair dealing.

51.     The Plaintiff and the Class are express and/or implied intended third party beneficiaries of Agreements between the United States Government, the State of Louisiana, Orleans Parish, and the City of New Orleans, wherein Defendant Ochsner agreed to provide mutually affordable medical care to the Plaintiff and the Class in return for substantial federal, state, and local tax exemptions.

52.     Alternatively, the Plaintiff and the Class entered into an express and/or implied contractual relationship with Defendant Ochsner wherein each Plaintiff and Class member was admitted to an Ochsner hospital for the purpose of receiving medical care.

53.     Defendant Ochsner breached its duty of good faith and fair dealing to the Plaintiff and the Class by: failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class a higher amount for medical services than it charged its insured patients for the same services; charging the Plaintiff and the Class unreasonable charges for medical care; utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect such outstanding grossly inflated medical debt from the Plaintiff and the Class; providing

-19-

substantial discounts off the gross charges to its Board of Directors and entities connected to the Board of Directors; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals.

54.     Such unfair and bad faith conduct by Defendant Ochsner proximately caused economic injury and other damages to the Plaintiff and the Class.

### COUNT FOUR
### BREACH OF CHARITABLE TRUST

55.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 54 of the Complaint.

56.     By accepting federal, state and local tax exemptions under 26 U.S.C. §501(c)(3), Defendant Ochsner created and entered into a public charitable trust to provide mutually affordable medical care to its uninsured patients.

57.     The Plaintiff and the Class are the intended beneficiaries of this charitable trust created by virtue of Defendant Ochsner's acceptance of federal, state and local tax exemptions.

58.     Defendant has breached its charitable trust obligations to the Plaintiff and the Class by:  failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class significantly more than its insured patients for the same medical services; failing to use its net assets and revenues in the millions of dollars to provide mutually affordable medical care to the Plaintiff and the Class; utilizing aggressive, abusive and humiliating collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the

-20-

Plaintiff and the Class; providing substantial discounts off the gross charges to its Board of Directors and entities connected to its Board of Directors; insulating from taxation the income earned by fitness centers, apartments and other noncharitable ventures; and allowing noncharitable for-profit entities to derive a profit from use of its tax-exempt hospitals. As a result of such conduct, the Plaintiff and the Class have not received the benefit of the charitable trust created for their benefit.

59.     The aforementioned breaches of charitable trust have caused the Plaintiff and the Class economic injury and other damages.

**COUNT FIVE**

**LOUISIANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW**

60.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 59 of the Complaint.

61.     The Louisiana Unfair Trade and Practices and Consumer Protection Law, La. R.S. 51:1401 *et seq.*, was enacted to prohibit and protect Louisiana citizens from deceptive, fraudulent and unfair conduct.

62.     As alleged above, Defendant Ochsner's conduct in charging the Plaintiff and the Class the highest and full uncompensated cost for medical care and its charging the Plaintiff and the Class a higher amount than its insured patients for the same medical services, despite its charitable, nonprofit, tax exempt status, is in violation of the Louisiana Unfair Trade and Practices and Consumer Protection Law because it is unfair, discriminatory, unconscionable, unethical, immoral, and oppressive. Such conduct is against public policy and has caused substantial economic injury to the Plaintiff and the Class.

-21-

63.     Moreover, as alleged above, Defendant Ochsner's aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments, despite its charitable, nonprofit, tax exempt status, is unfair, discriminatory, unethical, immoral, and oppressive. Such conduct is also against public policy and has caused substantial economic injury to the Plaintiff and the Class, including but not limited to bankruptcy and/or financial ruin.

64.     The aforementioned violations of the Louisiana Unfair Trade and Practices and Consumer Protection Law have caused the Plaintiff and the Class economic injury and other damages.

## COUNT SIX

### VIOLATIONS OF THE EMERGENCY MEDICAL TREATMENT AND ACTIVE LABOR ACT

65.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 64 of the Complaint.

66.     Under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. §1395 dd, a "participating hospital" must provide a medical screening examination to any individual that comes into its emergency room for an "emergency medical condition" in order to determine whether such emergency medical condition exists. If such an "emergency medical condition" does in fact exist, the "participating hospital" must provide sufficient medical examination and/or treatment necessary to stabilize the condition. The express intent of the EMTALA is to prohibit hospitals from denying or delaying emergency medical treatment to patients without medical insurance because of their uninsured status.

-22-

67.     Defendant Ochsner is a "participating hospital" as defined in 42 U.S.C. §1395 cc and §1395 dd.

68.     On information and belief, before Defendant Ochsner would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiff and the Class, it first analyzed their ability to pay for such medical care and required the Plaintiff and the Class to sign form contracts agreeing to pay Ochsner in full for unspecified and undiscounted medical charges.  Defendant Ochsner would not provide emergency medical screening and/or treatment to the Plaintiff and the Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for medical care.  By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiff' and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given,  Defendant Ochsner violated the EMTALA, 42 U.S.C. §1395 dd.   Such conduct in failing to provide emergency room medical care to the Plaintiff and the Class without regard to their ability to pay for such medical care is also in violation of 26 U.S.C. §501(c)(3).

69.     Such violations of 42 U.S.C. §1395 dd have proximately caused the Plaintiff and the Class economic injury and other damages.

### COUNT SEVEN
#### UNJUST ENRICHMENT/CONSTRUCTIVE TRUST

70.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 69 of the Complaint.

-23-

71.     Defendant Ochsner has been unjustly enriched at the Plaintiff's and the Class' expense.  As alleged above, Defendant Ochsner has failed to provide mutually affordable medical care to the Plaintiff and the Class despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose.  Moreover, contrary to its charitable, nonprofit, tax exempt status, Defendant Ochsner has failed to utilize its substantial net assets and revenues, valued in the hundreds of millions of dollars, to provide mutually affordable medical care to the Plaintiff and the Class.  Defendant Ochsner has also realized profits in the millions of dollars by charging the Plaintiff and the Class the highest and full undiscounted cost for medical care and by charging the Plaintiff and the Class a higher amount for medical care than its insured patients.

72.     The Plaintiff and the Class have suffered severe economic injury and other damages as a proximate consequence of Defendant Ochsner's unjust enrichment.

73.     As a result of Defendant Ochsner's breach of contract along with its wrongful, unfair, discriminatory, abusive, and noncharitable conduct, it is in possession of tax savings, profits and other assets that it in good conscience and equity should not be entitled to retain.  The Plaintiff and the Class are therefore entitled to all damages resulting from Defendant Ochsner's unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of Defendant Ochsner's federal, state and local tax exemption savings.  The Plaintiff and the Class are also entitled to the imposition of a constructive trust on all profits Defendant Ochsner wrongfully obtained by charging the Plaintiff and the Class the highest and full undiscounted cost of medical care.  The Plaintiff and the Class are further entitled to the imposition of a constructive trust on the difference between the amount Defendant Ochsner has charged the Plaintiff and the Class and the amount it has charged its insured patients.    Lastly,

-24-

the Plaintiff and the Class are, therefore, entitled to the imposition of a constructive trust on Defendant Ochsner's net assets and revenues in an amount sufficient to provide to the Plaintiff and the Class mutually affordable medical care pursuant to its charitable, nonprofit, tax exempt status.

**COUNT EIGHT**

**CIVIL CONSPIRACY/CONCERT OF ACTION**

74.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 73 of the Complaint.

75.     The AHA presents itself in its various websites and publications as the representative of Ochsner for the nonprofit hospital industry, including Defendant Ochsner. According to its website, the AHA "ensures that members' perspectives and needs are heard and addressed in national health policy development, legislative and regulatory debates, and judicial matters." the AHA also advises Defendant Ochsner and its nonprofit hospital members on its billing and collection practices concerning the uninsured.

76.     The AHA, through its billing and collection assistance, its December 16, 2003 letter to Secretary Thompson, lobbying efforts, and other representations, actively conspired and acted in concert with Defendant Ochsner to breach Ochsner's contracts with the United States Government, State of Louisiana, Orleans Parish, and the City of New Orleans, the Plaintiff and the Class by assisting, concealing, and falsely representing and justifying Ochsner's billing and collection practices.

77.     Specifically,     such     assistance,     false     justification,     concealments     and misrepresentations have allowed and enabled Defendant Ochsner to continue to breach the

-25-

aforementioned contracts by: failing to provide emergency room medical care to the Plaintiff and the Class without regard for their ability to pay for such medical care; charging the Plaintiff and the Class the highest and full cost of medical care; failing to provide mutually affordable medical care to the Plaintiff and the Class; charging the Plaintiff and the Class substantially more than its insured patients for the same medical services; failing to use its net assets and reserves in the millions of dollars to provide mutually affordable health care to the Plaintiff and the Class; and engaging in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class.

78.     Such acts of conspiracy and concert in action by the AHA proximately caused Defendant Ochsner to be unjustly enriched at the Plaintiff' and Class' expense and also proximately caused the Plaintiff and the Class economic injury and other damages.

COUNT NINE

AIDING AND ABETTING

79.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 78 of the Complaint.

80.     The AHA aided and abetted Defendant Ochsner's breach of its tax exempt contracts with the United States Government, State of Louisiana, Orleans Parish, and the City of New Orleans, the Plaintiff and the Class by providing substantial advisory assistance and guidance to Defendant Ochsner on how to bill its uninsured patients the full undiscounted cost of medical care and how to collect such grossly inflated medical debt from the Plaintiff and the Class through collection lawsuits, liens and garnishments.

-26-

81.     The AHA, through its December 17, 2003, letter to Secretary Thompson, lobbying efforts, and other representations, further aided and abetted Defendant Ochsner's breaches of contract by falsely justifying, misrepresenting, and concealing Ochsner's billing and collection practices to the federal, state and local governments as well as the Plaintiff and the Class.

82.     Such substantial assistance by the AHA allowed and enabled Defendant Ochsner to: fail to provide emergency room medical care to the Plaintiff and the Class without regard for their ability to pay for such medical care; charge the Plaintiff and the Class the highest and full cost of medical care; fail to provide mutually affordable medical care to the Plaintiff and the Class; charge the Plaintiff and the Class substantially more than its insured patients for the same medical services; fail to use its net assets and revenues in the millions of dollars to provide mutually affordable health care to the Plaintiff and the Class; and engage in aggressive, abusive, and harassing collection practices such as lawsuits, liens, and garnishments to collect such inflated and unreasonable medical debt from the Plaintiff and the Class.

83.     Such substantial assistance by the AHA proximately caused Defendant Ochsner to be unjustly enriched at the Plaintiff's and the Class' expense and also proximately caused the Plaintiff and the Class economic injury and other damages.

## COUNT TEN
### INJUNCTIVE/DECLARATORY RELIEF

84.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 83 of the Complaint.

-27-

85.     As a result of Defendant Ochsner's wrongful, unfair, discriminatory, and unconscionable charging and collection practices, Plaintiff and the Class have suffered and, unless abated, will continue to suffer severe and irreparable harm and injury.

86.     Accordingly, Plaintiff and the Class respectfully request that this Court enter a preliminary and/or permanent injunction, in accordance with FRCP 23(b)(2), ordering Defendant Ochsner to cease and desist: charging the Plaintiff and the Class the highest and full undiscounted cost of medical care; charging the Plaintiff and the Class a higher amount for medical services than its insured patients for the same services; and utilizing aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt from the Plaintiff and the Class.

87.     Plaintiff and the Class also seek a prospective Order from the Court, in accordance with FRCP 26(b)(2), requiring Defendant Ochsner: to provide mutually affordable medical care to the Plaintiff and the Class;  to charge the Plaintiff and the Class no more for medical services than it charges its insured patients, and to cease its attempts to collect outstanding medical debt from the Plaintiff and the Class until its has complied with a 180-day waiting period and attempted in good faith to settle such outstanding debt with the Plaintiff and the Class through a graduated payment plan or other means.

## VIII.
## DAMAGES

88.     Plaintiff hereby incorporates and adopts by reference each and every allegation set forth in paragraphs 1 through 87 of the Complaint.

89.     As a direct and proximate result of Defendant Ochsner's breach of contract, breach of duty of good faith and fair dealing, violations of the Louisiana Unfair Trade Practices and Consumer Protection Law, violation of the EMTALA, breach of charitable trust, and unjust enrichment, the Plaintiff and the Class have suffered economic injury and damages.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this matter be tried before a jury and judgment be entered against Defendant Ochsner for:

1)      all economic, monetary, actual, consequential, and compensatory damages caused by Defendant Ochsner's conduct;

2)       a constructive trust to be imposed on: Defendant Ochsner's federal, state and local tax exempt savings; Ochsner's profits obtained from charging the Plaintiff and the Class the highest and full undiscounted cost for medical care; and Ochsner's net assets and revenues in an amount sufficient to provide the Plaintiff and the Class mutually affordable medical care; and

3)      injunctive and/or declaratory relief.

Respectfully submitted, this the _15th_ day of _July_ 2004.

ORECK, BRADLEY, CRIGHTON,
ADAMS& CHASE

1100 Poydras Street
Suite 1440
New Orleans, Louisiana 70163
Telephone: (504)525-8001
Facsimile: (504)525-8018

BY: _____
ANDRE BURVANT (La. #23982)

SCRUGGS LAWS FIRM
120-A Courthouse Square
P.O. Box 1136
Oxford, MS 38655
Telephone: (662)281-1212
Facsimile: (662)281-1312

BY: _____
RICHARD F. SCRUGGS, MSB # 6582 (T.A.)
SIDNEY A. BACKSTROM, LAB #23632
ZACH SCRUGGS, MSB # 100011

-30-